JAMES NASER, AND PETER BOWE, AS SHERIFF OF NEW YORK, PLAINTIFFS, v. THE FIRST NATIONAL BANK OF THE CITY OF NEW YORK, DEFENDANT.

*Transmission of a draft for collection — when the collecting bank becomes the debtor of the owner of the draft.*

The firm of E. O. Dennecken & Co., of London, having drawn a draft for a sum named, upon the plaintiff Naser, payable at his place of business in New York city, gave the draft to the firm of McCulloch & Co., London, who, at the request of the drawers, transmitted the same to the defendant, at New York, for collection. McCulloch & Co. had no interest in the draft or its proceeds, and received it merely for transmission to the defendant. Before the draft became due the plaintiff Naser commenced an action against Dennecken & Co., and immediately after paying the draft attached the moneys so paid as a debt due from the defendant to Dennecken & Co. The defendant disputed the validity of the attachment, upon the ground that it was the debtor of McCulloch & Co., and not of Dennecken & Co.

*Held*, that this claim could not be sustained, and that the plaintiff acquired a valid lien upon the proceeds of the draft by virtue of his attachment.

MOTION for a new trial on exceptions, ordered to be heard in the first instance at the General Term, after a verdict had been directed in favor of the defendant.

*Samuel Untermyer*, for the plaintiff.

*Fisher A. Baker*, for the defendant.

BRADY, J.:

The plaintiff Naser and the firm of E. O. Dennecken & Co., of London, had business transactions, in the course of which the firm mentioned drew upon Naser, at No. 7 Beaver street, this city, by draft, dated London, June 19, 1880, for £817 9s., and which was sent to the defendants by the firm of McCulloch & Co. by request of the drawers. Before the payment of the draft Naser began an action by attachment against Dennecken & Co., for a claim due to him, and on the 3d of July, 1880, paid the draft to the defendant and immediately attempted to levy upon the proceeds or the money by which the draft was paid. Thereafter judgment was entered by Naser in the action brought by him against Dennecken & Co., and an execution was duly issued upon that judgment.

This action was then commenced by leave of the court to reduce into the possession of the sheriff the moneys which had been attached so that they could be applied toward the satisfaction of the judgment. The court below directed a verdict for the defendant on the ground that it was not the debtor of Dennecken & Co., but of McCulloch & Co.

Upon the trial the testimony of the members of the firm of McCulloch & Co. was given, and it appears from it, nothing to the contrary appearing, that that firm had no business with Dennecken & Co. in the months of May, June and July, 1880, other than to forward a draft for collection on the plaintiff Naser for £350 in the month of May, and also the draft which is the subject of this controversy. It also appears that there was no account on the books of McCulloch & Co. with the firm of Dennecken & Co., or with any of the members of that firm; neither the firm of Dennecken & Co., nor any of its members, had at any time any account with McCulloch & Co., and none of them ever saw the draft or bill of exchange in question.

McCulloch & Co. had no interest in the draft nor in its proceeds therefor. They received it merely for transmission to the defendant for collection. It is insisted by the defendant that upon the collection of the draft, that is, upon the payment of the amount by the plaintiff Naser, the defendant became the debtor of McCulloch & Co. as its depositor; the relation of debtor and creditor being at once created as a legal sequence of that act.

The plaintiff contends that the defendant was the agent of Dennecken & Co. to collect the draft, McCulloch & Co. being only employed or asked to transmit it for collection. In the consideration of the question presented for decision, we start with the fact that McCulloch & Co. had no interest whatever in the draft, or any part of it, either as a firm or as individuals, and that all they undertook to do was to send it away for collection, the title to the draft and its proceeds remaining absolutely in Dennecken & Co., in whose favor it was drawn and by whom it was transmitted. In the cases of the *Bank of Washington* v. *Triplett* (1 Pet., 25); *Bank of Orleans* v. *Smith* (3 Hill, 560); *Fabens* v. *Mercantile Bank* (23 Pick., 330); *Lawrence* v. *Stonington Bank* (6 Conn., 528), and *Montgomery County Bank* v. *Albany City Bank* (17 N. Y., 459), the distinction

is drawn between the delivery of a draft or promissory note to an agent at the place where the drawee resides for collection, and its delivery to a person merely for transmission to another agent at the place where the drawee resides.

In the case of the *Montgomery County Bank* v. *Albany City Bank (supra)*, the court said, speaking of the *Bank of Orleans* v. *Smith:* " There the case shows that Triplet & Neal, the owners and holders of a bill drawn at Alexandria by Briscoe on Carnes of Washington city placed it in the hands of the cashier of the Mechanics' Bank of Alexandria, not for collection by that bank, but for the purpose of its being transmitted to a bank in Washington for collection, there being no allegation that the bank at Alexandria made any contract to collect the bill." And the learned Chief Justice MARSHALL in delivering the opinion of the court said : " The bill was not delivered to the Mechanics' Bank at Alexandria for collection, but for transmission, that the bank at Washington became the agent of the holder ; that the Bank of Alexandria performed its duty by transmitting the bill, and the whole responsibility of the collection devolved on the bank which received it for that purpose." Applying the principle of that case to this, the draft was delivered to McCulloch & Co. to be transmitted to the defendants for collection, and they did their whole duty by transmitting it, the responsibility of collecting it devolving upon the defendant. The court further said in that case : " It was equally well settled that when a note is deposited with a bank for collection, which is payable at another place, the whole duty of the bank so receiving the note in the first instance, is seasonably to transmit the same to a suitable bank or other agent at the place of payment, and as a part of the same doctrine it was well settled that if the acceptor of a bill or promissor of a note has his residence in another place, it shall be presumed to have been intended and understood between the depositor for collection and the bank that it was to be transmitted to the place of residence of the promisor."

This distinction substantially disposes of the question, for the reason that the defendant being the agent of Dennecken & Co., became the debtor of that firm, a fact made manifest by the proof given herein that the firm of McCulloch & Co. had no interest whatever in the draft or its proceeds. The money, which was

employed for the payment of the draft, therefore, as soon as it was paid to the bank, became subject to the attachment issued by the plaintiff in his suit against Dennecken & Co., there being no question upon the facts or the law stated that the money belonged to the attachment debtors. It seems to be quite clear upon these facts that an action could be maintained against the defendant by Dennecken & Co., and if an action could be maintained by Dennecken & Co., the attaching creditors by virtue of the attachment were subrogated to the rights of Dennecken & Co.

There is a class of cases to which the respondent refers, in which the responsibility of the collecting agent has been discussed, but none of them treat of the question here considered. The liability of the collecting agent has been considered and declared under a variety of circumstances, but in each case there was a distinction actually existing between the respective duties of collecting and transmitting for collection. The liability has been declared to be different. The case of *Colvin* v. *Holbrook* (2 Comst., 126) does not sustain the defendant's proposition for the reason that that was an action brought against a deputy sheriff for money actually received by him in that character. It appeared in that case that there had been a sale of real estate upon execution and that a junior judgment-creditor on redeeming from the sale paid to the deputy Holbrook, for the use of the purchaser, the amount of the bill and interest. And it was held that an action would not lie against the deputy to recover the money, although he had not paid it over to the sheriff, and had refused on demand to pay it to the plaintiff, who was the assignee of the certificate of sale. That case differs essentially from this. There the sheriff was liable.

The case of *Costigan* v. *Newland* (12 Barb., 456) is not analogous to the one in hand. There the defendant, as attorney for one De Forrest, foreclosed a mortgage, and after paying the mortgage debt and interest and costs out of the money arising from the sale, a surplus remained in the hands of the defendant amounting to $180.95. The plaintiff claimed the surplus by reason of a judgment he had recovered against the mortgagors, which was the oldest unpaid lien on the premises proved on the trial. And while such surplus remained in the defendant's hands, the plaintiff served notice on the defendant of his claim and the facts on which it was

based and demanded the money. The cause was referred and a report given in favor of the defendant, which was upheld. The court said in that case, it is true that where money was properly paid to an agent the party ultimately entitled to it could recover only from the principal; in other words, that where the party claims the money in affirmance of the right of the agent to receive it for his principal, he can sue only the principal and not the agent for the money.

The doctrine in that case may be applied here, because the judgment-creditor by virtue of his attachment and execution, and acting under them, became the principal; in other words, succeeded to all the rights of Dennecken & Co. in the fund which was in the defendant's hands on payment of the draft.

The examination of this case leads to the conclusion, therefore, that the plaintiffs were entitled to recover and that the judgment should have been in their favor and not for the defendant. The result should be therefore that the verdict be set aside and a new trial ordered.

Daniels, J., concurred.

Present — Brady, P. J., and Daniels, J.

Verdict set aside, new trial ordered, costs to abide event.